STATE of Minnesota, Respondent,

v.

Nicholas NMN JAWORSKY, Appellant.

No. C6–92–2499.

Court of Appeals of Minnesota.

Aug. 31, 1993.

Review Denied Sept. 30, 1993.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., and Linda M. Freyer, Asst. County Atty., Minneapolis, for respondent.

John M. Stuart, State Public Defender and Susan K. Maki, Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and KLAPHAKE, and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Nicholas NMN Jaworsky was convicted of criminal vehicular operation and driving while intoxicated. Jaworsky moved for a new trial and to have declared unconstitutional the Minnesota Sentencing Guidelines' recommended sentence for causing death while negligently operating a motor vehicle while under the influence of alcohol. Both motions were denied. We affirm.

### FACTS

On the evening of September 8, 1991, Jaworsky was driving his van on Interstate Highway 35 near downtown Minneapolis. Jaworsky's wife and daughter, and a family friend, Zenovia Procyk, were passengers. Two drivers saw the van begin to weave.

One driver also saw Jaworsky slumped over the wheel as if asleep. Moments later, the van fishtailed and flipped over. The crash broke his wife's neck and his daughter's arm and killed Procyk. Jaworsky was taken to the hospital. A blood test showed that his blood alcohol level at the time of the accident was approximately 0.29.

Jaworsky's insurance company hired expert Richard W. Bronson to examine the van. Bronson removed the vehicle's motor mounts and prepared a report saying that the defective motor mounts could have caused uncontrollable acceleration. Jaworsky's defense was in part an argument that vehicular malfunctions were the direct cause of the accident, regardless of whether he had been drinking, so he asked Bronson to testify at his criminal trial.

Bronson died before trial and his supervisor inadvertently threw away the motor mounts. Since this made it impossible to have the motor mounts examined by other experts, Jaworsky sought to have Bronson's report admitted at his trial. The trial court denied Jaworsky's motion on the basis that the report lacked the necessary guaranty of trustworthiness.

At the close of evidence, the trial court gave the following jury instructions:

A cause is a cause which had a substantial part in bringing about the occurrence at issue.

There may be more than one cause of an occurrence. Here one of the charged offenses charges [Jaworsky] with causing the death of Zenovia Procyk by operating a motor vehicle in a negligent manner while under the influence of alcohol. When the effects of negligence and other effects actively work at substantially the same time to cause an occurrence, each may be a cause of the occurrence.

Effects of negligence may not be a cause when there is a superseding cause. To be a superseding cause, such other effects must come between the negligence and the occurrence at issue, must not have been brought about by the original negligence, must turn aside the natural sequence of events and produce a result which would not otherwise have followed from the original negligence and must not have been originally foreseeable by [Jaworsky].

Other instructions also incorporated causation. One directed the jury to determine whether Jaworsky

caused the death of Zenovia Procyk by operating a motor vehicle in a negligent manner while under the influence of alcohol. "Operating a motor vehicle in a negligent manner" means to operate without using ordinary or reasonable care.

Another instructed the jury to determine whether Jaworsky

caused the death of Zenovia Procyk by operating a motor vehicle while having an alcohol concentration of 0.10 or more.

Similar instructions were given on the charges arising from the injuries to Jaworsky's wife and daughter.

The jury retired with these, and other, instructions. After deliberating for some time, the jury sent two questions to the judge. The first asked:

If you agree [Jaworsky] was at 0.10 or more and Ms. Procyk died as a result of the accident, does it follow that one is guilty of criminal vehicular homicide alcohol concentration of 0.10 or more?

Or is it necessary to show that such operation with 0.10 or greater caused the death or bodily injury?

The second asked, "Does driving under the influence in itself constitute negligence?" After conferring with the attorneys, the court responded to the jury:

With respect to the second question, namely, "Does driving under the influence in itself constitute negligence?"

Negligence is the failure to use ordinary or reasonable care. It is for you to decide based on all of the evidence in this particular case what would or what would not constitute negligence.

With respect to your first question, you appear to be asking about the causal relationship between operating a motor vehicle with an alcohol concentration of 0.10 or more and the death or injuries that are implicated in this case.

Again, questions of cause are for you alone to decide. You may be assisted, however, in re-examining a few of the jury instructions.

\* \* \* \* \* \*

And further, you may be assisted in re-examining the instructions as to cause.

The jury returned guilty verdicts on one count each of: causing death as a result of operating a motor vehicle in a negligent manner while under the influence of alcohol, Minn.Stat. § 609.21, subd. 1(2) (1990); causing death as a result of operating a motor vehicle while having an alcohol concentration of 0.10 or more, Minn.Stat. § 609.21, subd. 1(3) (1990); driving or operating a motor vehicle while under the influence of alcohol, Minn.Stat. § 169.121, subd. 1(a) (1990); driving or operating a motor vehicle while having an alcohol concentration of 0.10 or more, Minn.Stat. § 169.121, subd. 1(d) (1990); and two counts of causing substantial bodily harm as a result of operating a motor vehicle while having an alcohol concentration of 0.10 or more, Minn.Stat. § 609.21, subd. 2a(3) (1990). Pursuant to the Minnesota Sentencing Guidelines, Jaworsky was sentenced to imprisonment for 48 months on his conviction under Minn.Stat. § 609.21, subd. 1(2). This conviction was merged with his convictions under Minn.Stat. § 609.21, subd. 1(3).

## ISSUES

1. Did the trial court err by excluding Bronson's report?

2. Was the trial court's jury instruction on causation erroneous?

3. Were the trial court's responses to the jury's questions proper?

4. Do the Minnesota Sentencing Guidelines violate the equal protection clauses of the Minnesota or United States Constitutions by recommending a 48–month sentence for convictions under Minn.Stat. § 609.21, subd. 1(2)?

5. Does the jury's verdict have adequate support in the record?

## ANALYSIS

### 1. Exclusion of Report

 Admissibility of evidence generally lies within the trial court's sound discretion. *State v. Brown,* 455 N.W.2d 65, 69 (Minn. App.1990), *pet. for rev. denied* (Minn. July 6, 1990). Even if error is found, reversal is only warranted "when the error substantially influences the jury to convict." *Id.*

 Whether the witness was under oath, how close in time the statement was made to the incident giving rise to the statement, and the ability of the opposing party to cross-examine the witness at the time of the statement are factors to consider in determining whether statements by an unavailable declarant are sufficiently trustworthy to justify admission under Minn.R.Evid. 804(b)(5). *State v. Hansen,* 312 N.W.2d 96, 101–02 (Minn.1981). In this case, Bronson was not under oath and there was no opportunity for the state to cross-examine him at the time he prepared the report. We find no abuse of discretion by the trial court in excluding the report.

### 2. Jury Instruction on Causation

 Selection of jury instructions is committed to the discretion of the trial court. *State v. O'Hagan,* 474 N.W.2d 613, 620 (Minn.App.1991), *pet. for rev. denied* (Minn. Sept. 25, 1991). This court must view the jury instructions in their entirety. *State v. Flores,* 418 N.W.2d 150, 155–56 (Minn.1988), *cert. denied,* 498 U.S. 945, 111 S.Ct. 359, 112 L.Ed.2d 322 (1990).

Jaworsky claims that the court failed to clearly explain that the causation instruction applied to the counts involving non-negligent operation of a motor vehicle while having an alcohol concentration of 0.10 or more. As a result, he maintains, the jury may have mistakenly believed that a superseding cause could not relieve him of liability under these subdivisions. We disagree.

Minn.Stat. § 609.21, subds. 1(3), 2a(3) no longer require proof of negligence as a separate element. *State v. Condon,* 497 N.W.2d 272, 276 (Minn.App.1993). Nevertheless, causation must still be shown. Minn.Stat. § 609.21, subd. 1(3) ("Whoever *causes* the

death of a human being * * * as a result of operating a motor vehicle, while having an alcohol concentration of 0.10 or more * * * is guilty of criminal vehicular homicide."); Minn.Stat. § 609.21, subd. 2a(3) Minn.Stat. § 609.21, subd. 1(3) ("Whoever *causes* substantial bodily harm to another, as a result of operating a motor vehicle, while having an alcohol concentration of 0.10 or more * * * is guilty of criminal vehicular operation.") (emphasis added).

█ Criminal vehicular homicide and criminal vehicular operation are derived from involuntary manslaughter. *Condon,* 497 N.W.2d at 275. Thus, not only must Jaworsky's act have been a "proximate cause" of the death or injury, there must not have been the "intervention of an efficient independent force in which [Jaworsky] did not participate or which he could not reasonably have foreseen." *State v. Schaub,* 231 Minn. 512, 517, 44 N.W.2d 61, 64 (1950) (discussing causation in context of involuntary manslaughter).

The supreme court has approved the following instructions:

> If the said beating, striking and kicking were material elements and substantial factors in the death, then the chain of causation is not broken by reason of the fact that another contributory cause would have been fatal even without the aid of said alleged beating, striking, and kicking.

*State v. Smith,* 264 Minn. 307, 321, 119 N.W.2d 838, 848 (1962). In doing so, the court rejected a defense claim that failure to give a specific superseding cause instruction was error. *Id.* at 321–22, 119 N.W.2d at 848–49. Here, the jury was instructed to determine whether Jaworsky's operation of a motor vehicle while having a blood alcohol concentration of 0.10 or more caused the death or injury. The jury was further instructed that a cause was something that played a "substantial part in bringing about the death or injury." In other words, the jury was told that in order to find Jaworsky guilty on these counts, it must find that his operation of the van while intoxicated was a substantial factor in causing the injuries and death. Viewed in their entirety, these instructions fairly presented the issue of causation to the jury.

*See id.* at 323, 119 N.W.2d at 849 (as long as instructions fully address question of causation, specific language not required). When asked for further explanation on this point, the court referred the jury back to the original instructions. The trial court was within its discretion in giving the instructions.

### 3. Responses to Jury Questions

█ Failure to object to the trial court's response to a question from the jury usually waives the right to appeal the issue. *State v. McMorris,* 373 N.W.2d 593, 595 (Minn.1985). However, even if there was no objection, appeal may be allowed if the court's response "abused its discretion to the defendant's prejudice." *State v. Spaulding,* 296 N.W.2d 870, 878 (Minn.1980).

█ Jaworsky claims that the trial court erred in its response to the jury's question whether driving under the influence in itself constituted negligence. Although he did not object at the time, he asserts that the court's answer was plain error because the state must show negligence and intoxication under Minn.Stat. § 609.21, subd. 1(2).

Jaworsky relies on *State v. VanWert,* 442 N.W.2d 795 (Minn.1989). In *VanWert,* the jury asked, " 'Does negligence beyond driving while intoxicated have to be proved?' " *Id.* at 797. The supreme court held that the trial court committed reversible error by telling the jury no other negligence need be proved. *Id.* Although the jury in Jaworsky's trial asked a similar question, the court responded quite differently. With the approval of Jaworsky's attorney, the court merely reiterated that negligence was a jury question. In addition, the evidence in *VanWert* was not so compelling that a jury would have necessarily returned a guilty verdict if the question had been answered correctly. *Id.* at 797. Here, there was ample evidence to support a finding of negligence, in the form of testimony that Jaworsky was slumped over the wheel and weaving down the road. *See, e.g., In re Welfare of J.G.B.,* 473 N.W.2d 342, 345 (Minn.App.1991) (crossing center line of two-lane highway can be negligence). The trial court's response to the jury's question was proper.

### 4. Constitutionality of Minnesota Sentencing Guidelines

■■■ The sentencing guidelines recommend a term of imprisonment of 48 months for violations of Minn.Stat. § 609.21 subds. 1(1), 1(2). Minn.Sent.Guidelines IV, V. The guidelines recommend a 21–month term of imprisonment for violations of Minn.Stat. § 609.21, subds. 1(3), 1(4). Minn.Sent.Guidelines IV, V. Jaworsky argues that the recommendation of a longer sentence for violations of Minn.Stat. § 609.21, subds. 1(1), 1(2) violates the equal protection clauses of the Minnesota and United States Constitutions. Minn. Const. art. I, § 2; U.S. Const.amend. XIV, § 1. One may not challenge the constitutionality of sections of a statute that have not been applied to one's disadvantage. *In re Welfare of A.K.K.*, 356 N.W.2d 337, 343 (Minn.App.1984). Jaworsky was neither charged with nor convicted of a violation of Minn.Stat. § 609.21, subd. 1(1). He is without standing to challenge the constitutionality of the guidelines' treatment of that subdivision. On the other hand, he was convicted of a violation of Minn.Stat. § 609.21, subd. 1(2). His challenge to the constitutionality of the guidelines' treatment of that subdivision may be considered.[1]

■■■ Jaworsky's constitutional challenge does not raise the spectre of a suspect class. Thus, we apply the rational basis test. *See State v. Russell,* 477 N.W.2d 886, 888–89 (Minn.1991) (applying rational basis test to facially neutral criminal statute). Under the Minnesota Constitution, application of the rational basis test requires that a legislative classification be based on a substantial and genuine distinction between those inside and outside the class; that the classification be relevant or genuine to the legislative purpose; and, that the purpose of the legislation is one that the state can legitimately try to achieve. *Id.* at 888. The federal rational basis test requires:

(1) a legitimate purpose for the challenged legislation, and (2) that it was reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose.

*Russell,* 477 N.W.2d at 887 (citing *Western & S. Life Ins. Co. v. State Bd. of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981)).

■■■ Minn.Stat. § 609.21, subds. 1(3), 1(4) require the state to prove that a defendant who caused a person's death by operating a motor vehicle had an alcohol concentration of 0.10 or more. Minn.Stat. § 609.21, subd. 1(2) requires the state to prove that a defendant who caused a person's death by operating a motor vehicle was under the influence of alcohol or a controlled substance *and* operated the motor vehicle negligently. The sentencing guidelines simply recognize that a person who negligently operates a motor vehicle while under the influence may be deserving of a longer sentence than a person who non-negligently operates a motor vehicle while under the influence, even if the latter individual has a higher alcohol concentration than the former. The element of negligence is a substantial distinction among the offenses.

Furthermore, the purpose of a more severe consequence for a more serious offense is at least in part promotion of the public safety. *See State v. Munnell,* 344 N.W.2d 883, 887 (Minn.App.1984) (public safety promoted by criminal prosecution). Minn.Stat. § 609.21, subd. 1(2), with its additional element of negligence, defines an offense that is substantially more serious than the offenses created by Minn.Stat. § 609.21, subds. 1(3), 1(4). The recommendation of a longer sentence for an offense involving negligence is relevant to the promotion of public safety.

Finally, it is undisputed that the state's right to promote the public safety includes the right to promote safety on its highways. *See, e.g., State v. Nordstrom,* 331 N.W.2d

---

1. Because of his multiple convictions, Jaworsky is a member of both the class to which the 48–month presumptive sentence applies and the class to which the 21–month presumptive sentence applies. Since his membership in the former class subjects him to direct injury in terms of a longer presumptive sentence, he has standing to challenge application of the sentencing guidelines. *See Paulson v. Lapa, Inc.,* 450 N.W.2d 374, 380 (Minn.App.1990) (direct injury or immediate danger thereof required for standing to bring equal protection challenge), *pet. for rev. denied* (Minn. Mar. 22, 1990).

901, 906 (Minn.1983). Deterrence of negligent driving is clearly a legitimate legislative interest.

In evaluating claimed equal protection violations, the Minnesota Constitution requires "a more stringent standard of review" than does the United States Constitution. *Russell*, 477 N.W.2d at 889. Since we hold that Jaworsky has failed to establish an equal protection violation under the Minnesota Constitution, we need not address in detail his claim of a violation of the federal equal protection clause. We note, however, that it was reasonable for the Minnesota Sentencing Guidelines Commission to believe that a longer recommended sentence for negligently driving under the influence serves the legitimate purpose of promoting the public safety and that Jaworsky's challenge on federal constitutional grounds must also fail.

### 5. Sufficiency of Evidence

Jaworsky has submitted a pro se brief essentially questioning whether the evidence was sufficient to support his conviction. We are limited to a painstaking analysis of the record to determine whether the jury's verdict has adequate support in the record. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). Our analysis finds sufficient evidence to support the verdict.

### DECISION

The trial court did not abuse its discretion by excluding Bronson's report or by instructing the jury on causation. The trial court did not abuse its discretion to Jaworsky's prejudice in responding to the questions from the jury. Jaworsky's rights under the equal protection clauses of the Minnesota and United States Constitutions were not violated by the Minnesota Sentencing Guidelines recommended 48–month sentence for his conviction under Minn.Stat. § 609.21, subd. 1(2). Jaworsky's conviction is supported by the evidence.

**Affirmed.**