In the Matter of the WELFARE OF C.P.W., Child.

No. C6–99–596.

Court of Appeals of Minnesota.

Sept. 21, 1999.

Review Denied Nov. 23, 1999.

Mike Hatch, Attorney General, St. Paul, MN; and Robert M.A. Johnson, Anoka County Attorney, M. Katherine Doty, Assistant County Attorney, Anoka, MN (for appellant)

Jenny Walker, Chief Public Defender, Tenth Judicial District, Patrick J. Fugina, Assistant Public Defender, Anoka, MN (for respondent C.P.W.)

John M. Stuart, State Public Defender, Minneapolis, MN (observer)

Considered and decided by KLAPHAKE, Presiding Judge, ANDERSON, Judge, and FOLEY, Judge.

## OPINION

DANIEL F. FOLEY, Judge.*

The state appeals the district court's conclusion that it failed to demonstrate probable cause that C.P.W. committed criminal vehicular homicide and operation when he pursued J.M.P. in a high-speed car chase and J.M.P. crashed into two other vehicles, injuring several people and killing one person. Because we find the state presented substantial evidence that C.P.W.'s actions were a proximate cause of the injuries and death, and J.M.P.'s decision to run a red light was not a superseding intervening cause, we reverse and remand.

## FACTS

On September 27, 1998, a group of youths were in the parking lot of a Taco Bell. T.E.S., C.R.H., and J.M.P. were riding in J.M.P.'s truck when several people yelled at them, "I'm gonna kick your ass." J.M.P. and his passengers drove through the parking lot and one of J.M.P.'s passengers "flicked off" C.P.W. and the passengers in his truck. A high-speed chase ensued.

J.M.P. was in the lead driving his Mazda truck. Behind him were three trucks driven by C.P.W., M.R.M., and W.D.A., respectively. The chase proceeded through a residential neighborhood and on to Coon Rapids Boulevard where the speed limit is 45 m.p.h. Witnesses stated the trucks were traveling between 55 and 90 m.p.h. down Coon Rapids Boulevard. They ran several red lights and repeatedly switched lanes.

When J.M.P. approached the intersection of Coon Rapids Boulevard and Crooked Lake Boulevard, he activated the yellow lights on top of his truck and sped towards the intersection. He ran the red light and struck a Mercury Tracer and a Ford van. The passenger in the Mercury

Tracer was killed and five other people were injured.

M.R.M. and W.D.A. followed J.M.P. from Anoka to approximately 111th and Coon Rapids Boulevard where they stopped and turned around. C.P.W. followed J.M.P. up to Crooked Lake Boulevard, where he stopped in the left turn lane before the intersection, and avoided the accident. C.P.W. claimed he was traveling slowly enough to avoid the accident without slamming on his brakes or squealing his tires. According to W.D.A., however, C.P.W. told him that he "stomped" on his brakes and got into the left turn lane to avoid the accident. C.P.W.'s truck did not leave any skid marks at the intersection.

T.E.S., a passenger in J.M.P.'s truck, told the police one of the people involved in the initial encounter at Taco Bell had punched J.M.P. a few days earlier while J.M.P. was stopped at a red light. Also during the chase, a passenger of one of the trucks threw a beer bottle at J.M.P.'s truck. T.E.S. additionally told police he yelled at J.M.P. to slow down, but J.M.P. said, "I don't want to get my butt kicked" and "No, they're gonna hurt my truck."

M.R.M., W.D.A., and C.P.W. later admitted to police that they were chasing J.M.P.'s truck and C.P.W.'s truck was leading the chase. During at least part of the chase, C.P.W.'s truck was bumper to bumper with J.M.P.'s.

C.P.W. admitted to police that he was driving 65 or 70 m.p.h. on Coon Rapids Boulevard and went through some red lights. He also told police they were chasing J.M.P. because of an incident that had occurred a few days earlier when J.M.P. had allegedly thrown some beer bottles at someone's car. C.P.W. stated they wanted J.M.P. to stop so they could ask him why he was throwing beer bottles at people.

A delinquency petition was filed charging C.P.W. with one count of criminal ve-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

hicular homicide, two counts of criminal vehicular operation resulting in great bodily harm, one count of criminal vehicular operation resulting in substantial bodily harm, and two counts of criminal vehicular operation resulting in bodily harm. The state moved to certify the proceedings from juvenile court to district court, but the certification hearing was cancelled on February 18, 1999.

On March 12, 1999, a probable cause hearing was held. The district court concluded C.P.W.'s driving was not the proximate cause of the collision because J.M.P.'s decision to speed through the intersection was a superseding intervening force breaking the chain of causation. The court granted C.P.W.'s motion to dismiss for lack of probable cause, and the state appealed.

## ISSUES

1. What is the appropriate standard for reviewing the state's appeal from a pretrial order dismissing a petition for lack of probable cause?

2. Did the state present substantial evidence that C.P.W.'s allegedly grossly negligent driving was the proximate cause of the collision that killed one person and injured several others?

3. Did the state present substantial evidence that J.M.P.'s decision to drive at a high speed and run a red light was not a superseding force relieving C.P.W. of liability?

## ANALYSIS

### I. Standard of Review

■ C.P.W. and the state dispute the appellate standard for reviewing the district court's dismissal of a petition for lack of probable cause. C.P.W. contends the standard is "clearly and unequivocally erroneous" as stated in *State v. Hegstrom*, 543 N.W.2d 698, 701 (Minn.App.1996), *review denied* (Minn. Apr. 16, 1996), while the state contends review is de novo. *See*

*State v. Plummer*, 511 N.W.2d 36, 38 (Minn.App.1994).

Although Minn. R. Juv. P. 21.04, subd. 1(3), prohibits the state from appealing pretrial orders dismissing petitions for lack of probable cause, case law provides an exception to the rule. *See State v. Moe*, 498 N.W.2d 755, 758 (Minn.App.1993) (holding case law creates an exception to Minn. R.Crim. P. 28.04, subd. 1, the criminal procedure rule equivalent to Minn. R. Juv. P. 21.04, subd. 1(3)). It allows the state to appeal in any case where a petition for lack of probable cause is dismissed solely on a question of law. *Id.* Because the state's appeal from the district court's pretrial order dismissing its petition for lack of probable cause presents a legal question, we conclude it should be reviewed de novo like other legal determinations. *See State v. Marshall*, 541 N.W.2d 330, 332 (Minn.App.1995) (holding an appeal from a dismissal for lack of probable cause is reviewed de novo, "as with other legal determinations"), *review denied* (Minn. Feb. 27, 1996); *see also State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992) (considering appropriate standard of review for state's appeal from pretrial order suppressing evidence where facts were not in dispute and trial court's decision was question of law and holding standard of review was de novo).

### II. Proximate Cause

■ Upon a motion to dismiss for lack of probable cause, the state must show it has substantial evidence admissible at trial that "would justify denial of a motion for a directed verdict of acquittal." *State v. Dunagan*, 521 N.W.2d 355, 356 (Minn.1994) (quotation omitted). A motion for a directed verdict of acquittal (judgment of acquittal) will be granted if the evidence is insufficient to sustain a conviction for the charged offense. Minn. R.Crim. P. 26.03, subd. 17(1).

■ In the instant case, C.P.W. was charged with criminal vehicular homicide in violation of Minn.Stat. § 609.21, subd. 1(1) (1998). This statute provides:

A person is guilty of criminal vehicular homicide resulting in death * * * if the person causes the death of a human being not constituting murder or manslaughter as a result of operating a motor vehicle:

(1) in a grossly negligent manner.

To meet its burden of proof, the state must provide substantial evidence that C.P.W. "caused" the death and injuries by operating a motor vehicle in a "grossly negligent" manner and there were no independent superseding forces that the defendant could not reasonably have foreseen. *See State v. Jaworsky*, 505 N.W.2d 638, 643 (Minn.App.1993), *review denied* (Minn. Sept. 30, 1993).

 The district court found, and the parties do not dispute, that C.P.W. operated his truck in a grossly negligent manner. Thus, the issue on appeal is whether he *caused* the death and injuries by his grossly negligent operation of the vehicle. The criminal vehicular homicide statute does not define "cause." However, in *Jaworsky*, a case involving an alleged error in the trial court's causation jury instruction on criminal vehicular operation, this court defined "cause" as synonymous with "proximate cause." *Id.* Also approved was the trial court's instruction that stated cause is "something that played a substantial part in bringing about the death or injury." *Id.* The Minnesota Supreme Court has similarly defined proximate cause in civil cases:

For a party's negligence to be the proximate cause of an injury, the act must be one which the party ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others. There must also be a showing that the defendant's conduct was a substantial factor in bringing about the injury.

*Canada v. McCarthy*, 567 N.W.2d 496, 506 (Minn.1997) (quotations omitted). The fact that a "collision would not have occurred but for the negligence of both parties does not compel a finding that the negligence of each is a proximate cause." *Ramirez v.*

*Miska*, 304 Minn. 4, 7, 228 N.W.2d 871, 873 (1975).

The state argues C.P.W.'s behavior was a proximate cause of the accident and J.M.P.'s decision to attempt to speed through the intersection was not an independent intervening superseding force that could not be reasonably foreseen. We agree that the state presented substantial evidence of these elements. In resolving this issue of first impression, we look to two cases from foreign jurisdictions: *State v. McClose*, 95 Wis.2d 49, 289 N.W.2d 340 (Wis.Ct.App.1980) and *State v. Shortridge*, 555 N.W.2d 843 (Iowa Ct.App.1996).

 *McClose* is one of several cases holding both drivers participating in a car race criminally liable for any resulting injury when there is a direct link between the defendant's driving conduct and the injury or death. 289 N.W.2d at 341 (citing cases from several jurisdictions). The *McClose* court explained the rationale for holding both drivers responsible.

We think when there is an understanding to reach a common destination and in doing so illegal speed is used and the cars are driven so closely together as to be practically in tandem, or to constitute a unit, that we have a situation of mutual stimulation where the negligence of each participant is so related to the negligence of the other participants that the participants should each be chargeable with the causal negligence of the other as to speed.

*Id.* at 342 (quoting *Ogle v. Avina*, 33 Wis.2d 125, 146 N.W.2d 422 (Wis.1966)). The court further explained that

[b]y their conduct, racing participants help to create a dangerous event. The actions of each participant are a natural reaction to the stimulus of the situation. * * * [T]heir actions and reactions to each other are to be expected.

*Id.*

 In *Shortridge*, the Iowa Court of Appeals extended the general rule holding participants in car *races* responsible for

each other's negligence to a participant in a car *chase.* 555 N.W.2d at 845–46. In that case, the defendant was convicted of criminal vehicular homicide when he threatened to seriously injure his former girlfriend, he chased her car through city streets, and her car collided with a utility pole killing the passenger. *Id.* at 844–45. On appeal, the defendant argued the evidence was insufficient to support the state's theory that he was the proximate cause of the passenger's death. *Id.* at 845. In upholding the conviction, the court reasoned proximate cause is based on foreseeability, and it was foreseeable that death or injury would result from a high-speed chase when one participant threatened serious bodily injury to the other prior to the chase. *Id.; see also State v. Brown,* 589 N.W.2d 69, 74–75 (Iowa Ct.App.1998) (holding death or injury in a moving shoot-out through downtown is highly foreseeable and defendant's participation in it was the proximate cause of the bystander's death whether it was the defendant or another participant in the shoot-out who fired the fatal shot).

We adopt the reasoning of the courts in *McClose* and *Shortridge.* While it is true the car driven by C.P.W. was not physically involved in the accident, C.P.W. was such an active participant in the ongoing course of conduct that he was effectively a proximate cause of the accident. The mere fact he was able to stop prior to the intersection does not excuse his conduct. The evidence shows C.P.W. and J.M.P. were not acting independently of each other. They jointly engaged in conduct demonstrating a conscious disregard for the safety of the public and a willingness to take unreasonable risks. Their actions and reactions were closely tied to one another and the potentially dangerous result of their actions was readily foreseeable. *See Shortridge,* 555 N.W.2d at 845 (holding "[a] high speed chase where one participant threatens serious bodily injury to the other is at least as foreseeable to result in death or injury as one where both parties are voluntarily engaging in the 'sport' of drag racing"). Thus, we conclude the state presented substantial evidence supporting probable cause that C.P.W.'s driving conduct was a substantial cause of the injuries and death in this case.

### III. Superseding Force

We must next determine whether there is substantial evidence J.M.P.'s decision to speed through the red light when there were cars in the intersection was an independent superseding force relieving C.P.W. of criminal liability. *See Lennon v. Pieper,* 411 N.W.2d 225, 228 (Minn.App. 1987) (stating "a superseding, intervening cause of harm acts as a limitation on a defendant's liability for his negligent conduct"). The trial court found J.M.P.'s decision was made independent of any action by C.P.W. because C.P.W. either stopped pursuing J.M.P. or was so far behind him, he no longer posed a threat. The trial court based this conclusion on the fact that C.P.W. was able to stop prior to the intersection without leaving skidmarks.

In order to qualify as a superseding intervening cause, this court has noted the occurrence must (1) come between the negligence and the occurrence at issue; (2) not have been brought about by the original negligence; (3) turn aside the natural sequence of events producing a result which otherwise would not have followed the original negligence; and (4) not have been foreseeable from the original negligence. *Jaworsky,* 505 N.W.2d at 641; *see also Canada,* 567 N.W.2d at 507 (listing virtually identical elements of a superseding cause in the context of a civil negligence action).

■ Applying this test to the present case, we conclude there is substantial evidence that J.M.P.'s decision to drive through the red light was not an intervening superseding cause limiting C.P.W.'s liability. The evidence indicates the chase was an ongoing event initiated by C.P.W.'s decision to follow J.M.P. and J.M.P.'s fear of the people chasing him. C.P.W. followed J.M.P. through a residential neighborhood and on to Coon Rapids Boulevard. They continually traveled at a high rate of speed, switched lanes back and forth, and

ran at least two red lights prior to the accident. There is no evidence indicating how far C.P.W. was behind J.M.P. at the time of the accident or whether J.M.P. knew how closely C.P.W. was following him when he reached the Crooked Lake Boulevard intersection. There is substantial evidence that J.M.P.'s decision to run the final red light was the natural end of the sequence of events, not an unrelated event that altered the likely result of the dangerous car chase.

Moreover, in light of C.P.W. and J.M.P.'s grossly negligent driving, the accident was a reasonably foreseeable event. Under these circumstances, there was substantial evidence that J.M.P.'s unlawful conduct was not an intervening superseding cause absolving C.P.W. of liability.

## DECISION

We conclude the district court erred in granting C.P.W.'s motion to dismiss for lack of probable cause. The state presented substantial evidence C.P.W.'s actions in chasing J.M.P. at a high rate of speed through several red lights were a proximate cause of the tragic automobile accident. There is also substantial evidence that J.M.P.'s decision to run a red light and attempt to speed through the intersection was not an intervening superseding cause breaking the chain of causation between C.P.W.'s actions and the accident. The state presented probable cause that C.P.W. committed criminal vehicular operation, and the ultimate decisions regarding proximate and superseding cause should be resolved at trial.

Thus, we reverse and remand for trial with directions to proceed in accordance with this opinion.

**Reversed and remanded.**

G. BARRY ANDERSON, Judge (concurring specially)

I concur in the result.