STATE of Minnesota, Respondent,

v.

Jeremy Scott NELSON, Appellant.

No. A10–1127.

Court of Appeals of Minnesota.

Nov. 21, 2011.

Lori Swanson, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, MN; and Brian Melton, Acting Special Assistant Becker County Attorney, Moorhead, MN, for respondent.

Jenneane L. Jansen, Jansen & Palmer, Minneapolis, MN, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge; SCHELLHAS, Judge; and STAUBER, Judge.

## OPINION

KLAPHAKE, Judge.

A jury found appellant guilty on three charges of criminal vehicular homicide for colliding with the victim's vehicle, which had entered the driving path of appellant's

vehicle moments before the collision. Appellant claims that the district court abused its discretion by excluding evidence of the victim's alcohol consumption and by failing to instruct the jury on the proper definition of causation.

### FACTS

Just after 3:00 a.m. on August 17, 2008, on County Road 1 near the town of Lake Park in Becker County, appellant Jeremy Scott Nelson's Chevy Silverado pickup truck struck a Honda all-terrain vehicle (ATV) driven by Christopher Wade Carlson, resulting in Carlson's death. The evening before, K.B., a mutual friend of both appellant and Carlson, arranged for the three to meet at Cormorant Days, a local event; they all arrived at the Cormorant Pub by 10:00 p.m. Two bartenders each remembered serving appellant two beers during the evening. At about 1:00 a.m., K.B. and Carlson went to the Roadhouse Bar and stayed about 30 to 45 minutes. K.B. then drove Carlson to Carlson's home on County Road 1 and went home himself. Appellant also went to the Roadhouse Bar and ordered two beers, but according to the bartender he gave one beer away.

Just after 2:00 a.m., appellant drove to K.B.'s house on County Road 1, where he and K.B. drank a beer on K.B.'s deck. Carlson also arrived at K.B.'s house, driving his ATV; he stayed about 15 minutes and then left for home on the ATV. According to K.B., when Carlson drove away on the ATV, its lights were illuminated. Appellant left K.B.'s house about five minutes after Carlson left.

J.J., who also lives on County Road 1 between K.B.'s and Carlson's homes, was grilling outside with some friends and saw an ATV come from the direction of K.B.'s house on County Road 1 around 3:00 a.m. He observed that the ATV had no lights on

and estimated that it was driving about 40 m.p.h.

The collision occurred on an east-west stretch of County Road 1, about five miles north of K.B.'s home. After appellant drove through a large curve at the top of a rise in the road, he entered the ditch on the south side of the eastbound lane as the road descended. The pickup travelled in the ditch for 355 feet before it came upon Carlson's ATV and struck it from behind. The ATV had also been driving in an easterly direction on the road and entered the same ditch approximately 50 feet before impact. Carlson's body was found lying on County Road 1, 342 feet from the point of impact. Carlson died within minutes from massive traumatic injuries. After the collision, appellant's pickup traversed County Road 1 to the ditch on the north side of the road, vaulted into the air after striking a field approach, and came to rest between 600–700 feet from the impact point of the collision. A passerby discovered the scene and contacted police, who arrived there at approximately 3:13 a.m.

Immediately following the accident, appellant locked his pickup and spent the next four hours at large on foot in the vicinity. He eventually arrived at the home of his great aunt, D.O., who lived about a mile-and-a-half north of the accident scene, at 7:15 a.m. on August 17. He was wearing muddy jeans and told D.O. that he had been in an accident and had been lost in a cornfield and some woods since then. Appellant's family reported the accident and took him to the hospital for examination. Becker County Sheriff Deputy Bruce Anderson met appellant at the hospital, noticed that appellant showed signs of intoxication, and read him the implied consent advisory. Appellant's blood alcohol concentration (BAC) at 8:55 a.m. on August 17 was tested at .056 and .058.

For his conduct, appellant was charged with three counts of criminal vehicular homicide (CVH), including

caus[ing] ... the death of another as a result of operating a motor vehicle: (1) in a grossly negligent manner; ... (2) in a negligent manner while under the influence of: (i) alcohol ... [and] (7) where the driver who causes the accident leaves the scene of the accident.

Minn.Stat. § 609.21, subd. 1(1), (2)(i), (7) (2010).

Before his seven-day jury trial, the district court denied appellant's motions to dismiss for lack of probable cause, to suppress evidence obtained during execution of a search warrant of appellant's pickup, and to suppress evidence obtained by Deputy Anderson when he overheard appellant talk to medical staff at the hospital. The district court, among other rulings, granted the state's pretrial motions to exclude any evidence offered by appellant to show his mental deficiency or diminished capacity and to exclude any testimony from appellant's treating physicians or psychiatrists regarding appellant's post-crash treatment or diagnosis. The district court also granted the state's motion to exclude any evidence of Carlson's alcohol consumption, although Carlson's BAC was measured at .15 following the accident and witnesses had told police that Carlson was so inebriated earlier in the evening that friends had convinced him to leave his vehicle at the bar. The court also granted appellant's motion to exclude *Spreigl* evidence of his prior traffic violations and DWI convictions.

Appellant did not testify at trial, but in addition to the testimony of many witnesses who observed appellant's conduct on August 16 and 17, the court permitted experts for both sides to testify to appellant's level of intoxication at the time of the accident and to their reconstruction of the accident. As to the accident reconstruction evidence, the state obtained a search warrant to obtain the sensory and diagnostic module (SDM) or "black box" from appellant's pickup. According to the state's accident reconstruction expert, Kenneth Drevnick, the SDM data showed that the pickup's speed was 88 m.p.h. five seconds before impact, 91 m.p.h. four seconds before impact, 94 m.p.h. three seconds before impact, and 81 m.p.h. one second before impact. Rod Eischens, the state patrol sergeant who conducted the on-scene accident reconstruction, testified that taking into consideration various factors such as slope, drag resistance, and vault speed, the pickup was driving at a minimum speed of 69 to 85 m.p.h. at the time of impact. The posted speed limit on the road is 55 m.p.h. The reconstruction experts agreed that appellant did not apply the vehicle's brakes until he encountered the field approach after striking Carlson's ATV, and that his accelerator was at 99% throttle[1] before that time.

According to appellant's accident reconstruction expert, Daniel Lofgren, the data from the SDM correlates to wheel rotation speed, not vehicle speed, and wheel spin[2] could cause a disparity that would affect the calculation of vehicle speed at impact. Because of the wheel-spin factor and other slight differences in variables used in his calculations, Lofgren concluded that appellant's vehicle was traveling only 61–70 m.p.h. at impact. From the SDM read-

---

1. Eischens testified that he has never seen 100% throttle, and that 99% throttle means that the gas pedal was depressed to the floor.

2. The state's reconstruction expert, Drevnick, defined wheel spin as a condition where there is power being applied to the tires, and the tires are actually spinning faster than the vehicle is traveling.

ings, as well as the physical evidence at the accident scene, Drevnick and Eischens both testified that there was no evidence of wheel spin in this case.

The jury found appellant guilty on all three counts. The district court denied appellant's motion for a downward dispositional departure at sentencing and imposed a presumptive 48–month executed prison sentence on the CVH-gross negligence count.

Appellant submitted a pro se supplemental brief to this court in which he attempted to offer his version of the facts, although he did not testify at trial. He seeks a new trial.

### ISSUES

1. Did the district court abuse its discretion by excluding evidence of the victim's alcohol consumption?

2. Did the district court abuse its discretion by instructing the jury on causation?

### ANALYSIS

### I.

 "Evidentiary rulings are within the sound discretion of the district court[,] and we will not disturb those rulings on appeal absent a clear abuse of that discretion." *State v. Nissalke*, 801 N.W.2d 82, 99 (Minn.2011) (quotation omitted). "A defendant has the right to present a meaningful defense." *Id.;* Minn. Const. art. 1 § 6. But a district court has discretion to exclude evidence if it is not relevant. *State v. Chambers*, 589 N.W.2d 466, 475 (Minn.1999).

 Appellant argues that the district court abused its discretion by excluding evidence of Carlson's alcohol consumption

because that evidence was relevant to the issue of causation. "Cause" is not defined in Minn.Stat. § 609.21, subd. 1, but Minnesota law requires the state to prove that appellant's act of operating a motor vehicle was the proximate cause of Carlson's death. *State v. Jaworsky*, 505 N.W.2d 638, 643 (Minn.App.1993), *review denied* (Minn. Sept. 30, 1993). In civil cases, Minnesota applies the following definition of proximate cause:

> For a party's negligence to be the proximate cause of an injury, the act must be one which the party ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others. There must also be a showing that the defendant's conduct was a substantial factor in bringing about the injury.

*Canada v. McCarthy*, 567 N.W.2d 496, 506 (Minn.1997) (quotations omitted). *Jaworsky* was the first Minnesota case to use the civil definition of proximate cause in a criminal vehicular operation case,[3] defining proximate cause as "something that played a substantial part in bringing about the death or injury." 505 N.W.2d at 643. The civil substantial factor definition of causation is now commonly used in criminal vehicular homicide and operation cases. *See, e.g., State v. Dunagan*, 521 N.W.2d 355, 356 (Minn.1994) (relying on substantial factor test to define proximate cause in criminal vehicular operation case); *State v. Hofer*, 614 N.W.2d 734, 737 (Minn.App. 2000) (stating in criminal vehicular homicide case that "[c]ausation is established by proof that [the accused's] conduct was a substantial causal factor" in bringing about the harm), *review denied* (Minn. Aug. 15, 2000); *In re Welfare of C.P.W.*, 601 N.W.2d 204, 208 (Minn.App.1999) (relying on substantial factor test to define proxi-

---

**3.** The offenses of criminal vehicular homicide and criminal vehicular operation rely on the

same definition of causation in defining the offense. *See* Minn.Stat. § 609.21, subd. 1.

mate cause in criminal vehicular homicide case), *review denied* (Minn. Nov. 23, 1999);.

But there can be more than one cause of a resulting harm, and the negligence of a second party may affect the determination of proximate cause as to a first party's negligence. "An intervening, superseding act breaks the chain of causation set in operation by a defendant's negligence, thereby insulating his negligence as a direct cause of the injury." *Hofer*, 614 N.W.2d at 737 (quotation omitted). "A superseding, intervening cause of harm is generally the act of a third party occurring after a defendant's negligent act and operating as an independent force to produce the injury." *Id.* (quotation omitted). Or, "[w]hen the acts or omissions of two or more persons combine to bring about a harmful result, those acts or omissions are concurring causes of the harm." *Id.* In some cases, the negligence of the parties is so intertwined that they "combine to bring about a harmful result[.]" *Id.* Thus, when "the negligence of each participant is so related to the negligence of the other" and the result of their conduct was foreseeable, one of the participants may be charged with the causal negligence. *C.P.W.*, 601 N.W.2d at 208 (rejecting claim that a juvenile driver who initiated a car chase was not culpable for the death of several others whose vehicles were struck by the vehicle being chased, after that vehicle entered an intersection on a red light, even though the juvenile driver was able to stop before the intersection); *Hofer*, 614 N.W.2d at 738 (ruling that the combined acts of a negligent driver entering an intersection on a red light and a pedestrian running in front of a bus while a "Don't walk" signal was displayed, followed a natural sequence that resulted in the pedestrian's death, which "was a foreseeable consequence of each act of negligence" that did not excuse the driver's negligence); *see also State v. Mun-*

*nell*, 344 N.W.2d 883, 887 (Minn.App.1984) (ruling that contributory negligence of victim was not a defense to a charge of criminal vehicular operation in an accident involving a victim who was lying drunk on a county highway when struck by a vehicle that had crossed the center line); *Ramirez v. Miska*, 304 Minn. 4, 7, 228 N.W.2d 871, 873 (1975) (stating that if two parties are negligent in causing a collision, this "does not compel a finding that the negligence of each is a proximate cause").

The particular acts of negligence of both parties preceded their unfortunate collision. The facts at trial showed that appellant drove at an excessive rate of speed while under the influence of alcohol, likely entering the ditch only seconds before he struck Carlson's ATV. The facts also show that Carlson drove his ATV on a highway, without lights or a side-view mirror, and at the last second entered the ditch, directly in appellant's path. Carlson did not leave the highway and enter the ditch until approximately 50 feet before impact. To the extent that his conduct affected the determination of proximate cause, Carlson's impairment from alcohol consumption was relevant to the issue of causation on the criminal vehicular homicide charges. It was unfair to permit the jury to consider how appellant's decisions and conduct were affected by his consumption of alcohol without permitting the jury to consider how alcohol made a similar impact on Carlson. Because this evidence was excluded, the jury was unable to weigh all of the relevant evidence in evaluating the parties' conduct, including any impact that Carlson's alcohol consumption may have played in his decisions and conduct on the night of the accident.

Although the offense of criminal vehicular homicide is framed in terms of the negligence of the defendant, the negli-

gence of Carlson in relation to the negligence of appellant, particularly under the facts of this case, is also relevant. For this reason, we conclude that the district court abused its discretion by excluding evidence of Carlson's alcohol consumption. This court applies a harmless error standard to erroneous admission of evidence when we can conclude that the evidence had no impact on the verdict. *State v. Hahn*, 799 N.W.2d 25, 34 (Minn.App.2011). In this case, we cannot conclude that the district court's erroneous exclusion of the evidence had no impact on this verdict, particularly where there was another trial error that provided an independent basis for reversal.

## II.

Appellant next claims that the district court abused its discretion by failing to include his requested jury instruction on causation. An appellate court "review[s] a district court's decision to give a requested jury instruction for an abuse of discretion. Jury instructions, reviewed in their entirety, must fairly and adequately explain the law of the case. A jury instruction is erroneous if it materially misstates the applicable law." *State v. Koppi*, 798 N.W.2d 358, 361–62 (Minn.2011) (citations omitted). A defendant is entitled to a specific instruction if the trial evidence supports the instruction and the substance of the proposed instruction is not already contained in instructions chosen by the district court. *State v. Gatson*, 801 N.W.2d 134, 147–48 (Minn.2011); *State v. Yang*, 774 N.W.2d 539, 559 (Minn.2009).

With regard to the criminal vehicular homicide charges, the district court instructed the jury that an element of each charged offense was that "the defendant caused the death of Christopher Wade Carlson." Appellant's attorney had proposed to further define "causation" by including the following statement: "A 'direct cause' is a cause that had a substantial part in bringing about the accident." Appellant's attorney argued that a more complete definition or explanation of negligence was necessary in this case. We agree.

The causation instruction given by the court was accurate, but it did not assist the jury in deciding whether appellant was criminally culpable for causing the accident. The jury necessarily had to decide the conduct of appellant and Carlson in relation to each other in order to determine whether appellant would be held criminally responsible for the death. As noted earlier, seconds before impact, appellant's vehicle approached Carlson's ATV from the rear at a high rate of speed, but Carlson's ATV also veered from its path and into appellant's path moments before impact. On these facts, the jury needed to be instructed on the parties' fault as it related to whose conduct played a substantial factor in causing the accident. Because the caselaw defines causation in criminal vehicular homicide or operation cases as "something that played a substantial part in bringing about the death or injury," *Jaworsky*, 505 N.W.2d at 643, appellant was entitled to have this definition included in the jury instructions. Further, given the evidence on the victim's conduct of veering off the highway and into the path of appellant's vehicle just 50 feet before the collision, the victim's negligence could have been an intervening, superseding cause that necessitated a jury instruction on that aspect of causation. Without being properly instructed here, the causation instruction that the jury received did not fairly or adequately present the issue of causation to the jury. *See Koppi*, 798 N.W.2d at 364.

"Alleged errors in jury instructions are reviewed under the harmless error test. An erroneous jury instruction is not harmless if it cannot be said beyond a

reasonable doubt that the error had no significant impact on the verdict." *Gatson,* 801 N.W.2d at 147–48 (citation omitted). Because causation was the key issue in appellant's trial and the question to be decided by the jury was whether appellant's conduct ultimately caused the accident, appellant was entitled to a precise instruction on causation. *See Koppi,* 798 N.W.2d at 364 (ruling that "conflicting nature of the evidence" and seriousness of the jury instruction error required reversal of criminal conviction); *State v. Blasus,* 445 N.W.2d 535, 541 (Minn.1989) (stating that "[w]here error may have prejudiced a close factual case, this court will order a new trial, even if the evidence is otherwise sufficient to support the verdict.").

## DECISION

The district court abused its discretion by excluding appellant's proffered evidence of Carlson's alcohol consumption and by refusing to include in the jury instructions a definition of causation that referenced the substantial factor test, which requires appellant's conduct to have played a substantial part in bringing about Carlson's death. Because these trial errors were not harmless, we reverse appellant's convictions and remand for a new trial. We do not address appellant's additional arguments because of our decision to reverse.

**Reversed and remanded.**