STATE of Minnesota, Respondent,

v.

Eddie Cortez SMITH, Appellant.

No. A11–1687.

Court of Appeals of Minnesota.

Sept. 4, 2012.

Lori Swanson, Attorney General, John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, MN, for respondent.

Bradford Colbert, Jessica Merz Godes, Legal Assistance to Minnesota Prisoners, St. Paul, MN, for appellant.

Considered and decided by WRIGHT, Presiding Judge; ROSS, Judge; and HOOTEN, Judge.

## OPINION

ROSS, Judge.

Eddie Smith was driving drunk when his car collided with another one in which 93–year–old Edith Schouveller was a passenger. Schouveller was hospitalized with a brain injury, scalp laceration, and multiple spinal fractures. She remained hospital-

ized and contracted pneumonia, requiring intubation to breathe. But her do-not-resuscitate order prevented doctors from ordering the intubation procedure, and she died. A jury found Smith guilty of criminal vehicular homicide and criminal vehicular operation. Smith appeals, arguing that the superseding event of Schouveller's do-not-resuscitate order renders the collision evidence insufficient to prove that he caused Schouveller's death. We reject the argument, and we affirm.

## FACTS

Ninety-three-year-old Edith Schouveller was a passenger in a car moving through a residential St. Paul neighborhood, headed to church on a Sunday morning in March 2010. Eddie Smith was intoxicated and driving another car in the same neighborhood. The car Schouveller was in entered the intersection of Milton Avenue and Watson Street. At the same time, Smith, who was traveling faster than 50 miles per hour, also entered the intersection, disregarding his duty to yield.

The cars collided, injuring Schouveller and the other two adults in her car. Police arrived and noticed that Smith smelled strongly of alcoholic beverages. Paramedics arrived and took everyone to the hospital by ambulance. There, Smith consented to a blood test, which revealed a .11 alcohol concentration.

Before the collision, Schouveller lived an independent and active life. But the collision injured her brain, lacerated her scalp, and fractured her spinal cord in several places. She was admitted to the intensive care unit and treated by Dr. David Dries. Dr. Dries immediately stabilized Schouveller's broken neck with a rigid cervical collar that Schouveller was required to wear continually to avoid paralysis or death. Surgery was not an option because of Schouveller's advanced age and osteoporosis. Dr. Dries's prognosis for healing of Schouveller's broken neck was "quite limited." Schouveller's pain increased.

Schouveller's condition worsened during her 13 days of hospitalization. X-rays showed the accumulation of fluid in her left lung and areas of lung collapse. Schouveller was transferred to Presbyterian Homes, a nursing home and rehabilitation care center. She could not walk or stand and was in exceptional pain. She spent almost all of her time in bed. She had difficulty eating and swallowing. Two days after she arrived, a nurse discovered that her oxygen levels were dangerously low, she had a darker, unnatural complexion, and she had difficulty breathing with audible lung congestion. Schouveller returned to the hospital.

Dr. Sarah Roark diagnosed Schouveller with pneumonia. She had difficulty swallowing any water or more than half a teaspoon of food. A week after she returned to the hospital Schouveller had an episode of hypoxia and unresponsiveness. Dr. Roark increased Schouveller's oxygen levels but she did not respond favorably. The doctor determined that Schouveller required intubation—the insertion of a breathing tube down her airway to assist breathing. But Schouveller had executed a living will with a do-not-resuscitate order specifying that she not be intubated or resuscitated if the procedure would not restore her to her preferred quality of life. Schouveller also specifically told hospital staff during her treatment that although she wanted antibiotics and medical treatment for her pneumonia, she did not want to be intubated or resuscitated if her condition worsened.

Dr. Roark did not intubate Schouveller. She continued to have difficulty breathing, and she died later that evening. Dr. Roark believed that Schouveller would "possibly" have lived with intubation.

The state charged Smith with criminal vehicular homicide and criminal vehicular operation resulting in substantial bodily harm. *See* Minn.Stat. § 609.21, subds. 1(4), 1a(a), 1a(c) (2010). The district court conducted a jury trial in May 2011. The jury found Smith guilty of both counts. The district court sentenced Smith to prison for 25 months for criminal vehicular operation and 120 months for criminal vehicular homicide, and it directed that the sentences run concurrently.

Smith appeals his conviction of criminal vehicular homicide.

## ISSUES

I. Was the trial evidence sufficient to convict Smith of criminal vehicular homicide?

II. Did the district court commit plain error by failing to instruct the jury that Smith did not cause Schouveller's death if her do-not-resuscitate order was an intervening superseding cause?

## ANALYSIS

### I

▮▮▮ Smith first argues that the evidence is not sufficient to sustain his conviction of criminal vehicular homicide. The argument fails. We analyze insufficient-evidence claims by determining whether the evidence and its reasonable inferences in a light most favorable to the guilty verdict support the jury's verdict. *Staunton v. State*, 784 N.W.2d 289, 297 (Minn. 2010) (quotation omitted). We will not disturb the verdict if "the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that [the] defendant was proven guilty of the offense charged." *Id.* (quotation omitted). We

"assume that the jury believed the state's witnesses and disbelieved contrary evidence." *State v. Brocks*, 587 N.W.2d 37, 42 (Minn.1998).

▮▮▮ A person is guilty of criminal vehicular homicide if he "causes ... the death of another as a result of operating a motor vehicle ... while having an alcohol concentration of 0.08 or more." Minn.Stat. § 609.21, subd. 1(4). Section 609.21 does not define the word "cause," but Minnesota law requires the state to prove that the act of operating a motor vehicle was the proximate cause of the victim's death. *State v. Nelson*, 806 N.W.2d 558, 562 (Minn.App.2011) (citing *State v. Jaworsky*, 505 N.W.2d 638, 643 (Minn.App.1993), *review denied* (Minn. Sept. 30, 1993)). A proximate cause is "something that played a substantial part in bringing about the death or injury." *Id.* (quotation omitted) (explaining that Minnesota applies the civil substantial factor definition of causation in criminal vehicular homicide and operation cases); *see also State v. Gatson*, 801 N.W.2d 134, 146 (Minn.2011) (holding that defendant's actions were a substantial factor if he "injured the victim, which in turn led to the victim's death") (quoting *State v. Olson*, 435 N.W.2d 530, 534 (Minn.1989)).

▮▮▮ Smith proximately caused Schouveller's death because he caused the collision, a substantial factor in the death. We recognize that the pneumonia and aspiration were the medical causes of death rather than the brain injury and broken neck that immediately resulted from the collision. But the evidence supports the finding that the life-threatening, postcollision complications also resulted. Dr. McGee testified that Schouveller's aspiration with hypoxia resulted from the accident. Her initial treating physician, Dr. Dries, also testified that the aspiration likely developed because Schouveller could no longer

breathe deeply, leading to partial lung collapse, and fluid accumulated in her chest after emergency medical professionals administered resuscitation fluids immediately after the collision. He also testified that Schouveller could not expel fluids from her lungs because her cough was weakened by pain, and she could not move her head or adjust her airway because the paralysis-inhibiting cervical collar restrained her.

Dr. McGee also testified that Schouveller's death resulted from her collision injuries, although he mistakenly testified that she was resuscitated at one point during her treatment. Like Dr. Dries, Dr. McGee testified that aspiration and pneumonia are common complications for elderly people who, like Schouveller, are forced to remain in a prone position.

■ We are not persuaded otherwise by Smith's challenge to the prosecutor's use of the phrase "but for" during closing argument. Failing the "but for" test does not establish causation. *See Harpster v. Hetherington*, 512 N.W.2d 585, 586 (Minn. 1994). Smith is correct that the state could not prove causation merely by demonstrating that "but for" Smith's alcohol-influenced collision Schouveller would not have died. But it is clear from the record that the state presented sufficient evidence that Smith's actions played a substantial part in Schouveller's death.

■ Smith also argues that Schouveller's do-not-resuscitate order acted as an intervening superseding cause that relieves him of any criminal culpability for her death. This raises an issue of first impression in Minnesota. To prove criminal vehicular homicide, the state must not only show that Smith's actions proximately caused Schouveller's death, there also must not have been "the intervention of an efficient independent force in which [Smith] did not participate or which he could not reasonably have foreseen." *See*

*Jaworsky*, 505 N.W.2d at 643. A superseding cause "breaks the chain of causation" that the defendant began with his conduct. *Nelson*, 806 N.W.2d at 563. It is a separate act that operates as an independent force to produce the victim's injury. *Id.* "If the defendant seeks to establish a superseding cause, the intervening conduct must be the sole cause of the end result." *Gatson*, 801 N.W.2d at 146 (quotation omitted).

■ In a criminal vehicular homicide case, an intervening cause is considered a superseding cause if it satisfies four elements:

1) Its harmful effects must have occurred after the original negligence; 2) it must not have been brought about by the original negligence; 3) it must have actively worked to bring about a result which would not otherwise have followed from the original negligence; and 4) it must not have been reasonably foreseeable by the original wrongdoer.

*State v. Hofer*, 614 N.W.2d 734, 737 (Minn. App.2000) (quotation omitted). Smith's argument that Schouveller's do-not-resuscitate order was a superseding cause does not satisfy the fourth element of the *Hofer* test. It is foreseeable that a drunk driver could injure an elderly or weak person so that the victim's injuries are so painful and the prognosis for a reasonable quality of life is so grim that it is medically acceptable and reasonable for the individual to prefer the possibility of death over medical intervention. The preference for, and creation of, a do-not-resuscitate order is a rational and accepted practice that many individuals, not just the elderly, have incorporated into their medical treatment plans. And Schouveller was well aware of the decision she was making in this case; she affirmed her preference for a do-not-resuscitate order to hospital medical staff

during the course of her treatment. Because the use of Schouveller's do-not-resuscitate order was reasonably foreseeable by Smith, it did not constitute an intervening superseding cause.

This case is also distinct from two cases cited by the state that both involved the removal of life-support. The state cites *State v. Olson* for the proposition that the removal of life support is not, as a matter of law, a superseding intervening cause if it does not produce a death that would have otherwise occurred. *See* 435 N.W.2d at 534 (holding that removal of life-support from six-week-old boy hospitalized after being violently shaken by his father was not a superseding intervening cause). It also relies on *State v. Gatson* for the same proposition. *See* 801 N.W.2d at 146 (holding that removal of nine-day-old infant's life support systems was not a superseding intervening cause of her death because medical intervention was a foreseeable consequence of the defendant's assault of the child's mother that caused her premature birth).

Two features distinguish this case from both *Olson* and *Gatson.* First, there is no evidence in this case that Schouveller's death was inevitable, unlike the victims in *Olson* and *Gatson.* Although the parties dispute whether Schouveller's overall condition was improving or deteriorating at the moment she required intubation, it is clear from the record that there is no direct evidence that death from her injuries was inevitable. Second, the decision not to intubate or resuscitate was made by Schouveller, not her doctors. In both *Olson* and *Gatson* the doctors decided that removing life support was appropriate considering the patients' prognoses. These two distinctions prevent us from accepting the state's argument to extend *Olson* and *Gatson* to this case, and they instead lead us to conclude that Schouveller's do-not-resuscitate order was not an intervening cause.

The evidence viewed in the light most favorable to the verdict was sufficient for the jury to conclude that Smith proximately caused Schouveller's death. And because an injured victim's use of a do-not-resuscitate order was reasonably foreseeable by Smith when he recklessly drove drunk and caused a car accident, Schouveller's do-not-resuscitate order did not constitute an intervening cause to relieve Smith of criminal liability.

## II

▬▬ Smith argues that the district court committed plain error when it failed to instruct the jury that he did not cause Schouveller's death if there was an intervening superseding cause. The district court "must instruct the jury on all matters of law necessary to render a verdict." Minn. R.Crim. P. 26.03, subd. 19(6). Smith concedes that he is entitled to relief only if he can show plain error, because his attorney specifically requested a superseding-cause jury instruction and then later agreed on the record with the instruction that was given. The failure to offer specific jury instructions or to object to instructions before they are given generally constitutes a waiver of the right to challenge the instructions on appeal. *State v. Cross,* 577 N.W.2d 721, 726 (Minn.1998); *see also State v. Harris,* 255 N.W.2d 831, 831 (Minn.1977) ("[S]ince defense counsel not only did not object to the instructions but requested instructions similar to those the court gave, we must hold that defendant waived the . . . issue."). But a "failure to object will not cause an appeal to fail if the instructions contain plain error affecting substantial rights or an error of fundamental law." *Cross,* 577 N.W.2d at 726. Plain error exists if there is an error, the error is plain, the error affects substantial rights. *State v. Ramey,* 721 N.W.2d 294, 302 (Minn.2006). Even if these three ele-

ments are met, this court has discretion whether to address the error to ensure the fairness and integrity of the judicial proceedings. *Id.*

██ Smith's argument fails because even if the district court erred, the error did not affect substantial rights. Smith's substantial rights were not prejudiced because there was no superseding cause. The application of a do-not-resuscitate order after Smith drove drunk and severely injured a person is a reasonably foreseeable consequence of Smith's actions.

## DECISION

Schouveller's decision to not be resuscitated or intubated is not an intervening superseding cause that prevents a conviction for criminal vehicular homicide. The state presented sufficient evidence for the jury to find that Smith proximately caused Schouveller's death and Smith fails to establish that his substantial rights were prejudiced by the jury instructions.

**Affirmed.**